UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CHARLES EDWARD FIELDS,

        Plaintiff,                       Case No. 2:13-cv-326

v.                                                  Honorable Robert Holmes Bell

SCOTT SPRADER et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on immunity grounds and/or for failure to state a claim.

**Factual Allegations**

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility but complains of events that occurred at the Alger Correctional Facility (LMF). In his *pro se* amended complaint, Plaintiff sues the following LMF employees: Deputy Wardens Scott Sprader and Dan Lesatz, Warden Catherine Bauman, Resident Unit Manager (RUM)Tammy Lindemuth and Hearing Officer Linda Maki.

Plaintiff's complaint concerns his request for personal protection. On March 1, 2012, Plaintiff filed a Michigan Department of Corrections (MDOC) Request for Protection/Investigation Report alleging that he could be killed by other prisoners because his brother is a MDOC corrections officer at a different prison. Plaintiff was then placed in temporary segregation.[1] On March 4, 2012, Plaintiff filed a grievance against Defendants Sprader and Lesatz because Plaintiff did not agree with their options for Plaintiff's protection. On March 5, 2012, Plaintiff's request for protection was denied by Defendants Sprader and Lesatz. On the same day, Defendants Sprader and Lesatz concluded that Plaintiff could not be managed in the general population. Plaintiff claims that Defendants Sprader and Lesatz then intended to classify Plaintiff to administrative segregation. At this point, Plaintiff argues that he should have received a Notice of Intent to Classify to Segregation (NOI) in accordance with MDOC Policy Directive 04.05.120 (effective Sept. 27, 2010). On March

---

[1]According to MDOC Policy Directive 04.05.120, ¶J (effective Sept. 27, 2010):

> Temporary segregation is used when it is necessary to remove a prisoner from general population pending a hearing for a major/Class I misconduct violation, classification to administrative segregation, pending an investigation of a prisoner's need for protection, or transfer . . . . The prisoner does not have to be provided with written notice of placement in temporary segregation; however, once it becomes the intent to classify the prisoner to administrate segregation, a Notice of Intent to Classify to Segregation shall be issued as set forth in Paragraph Q.

*Id*.

21, 2013, a corrections officer ordered Plaintiff to pack his things up to move out of general population but Plaintiff refused. Plaintiff then received a Class II/minor misconduct ticket for disobeying a direct order, which was eventually elevated to a Class I/major misconduct ticket by RUM Lindemuth.[2]

On March 30, 2012, Hearing Officer Maki found Plaintiff guilty of the major misconduct ticket and Plaintiff was classified to administrative segregation. On April 13, 2012, Defendant Bauman ordered sixty days of Plaintiff's disciplinary credits to be forfeited.

Plaintiff complains that Defendants Sprader, Bauman, Lesatz and Lindemuth retaliated against him for filing a grievance and for requesting protection by giving him a misconduct ticket. Plaintiff also alleges that Defendant Maki retaliated against him for filing a grievance by "minimizing the charge of disobeying a direct order to pack his things to move out to G.P. to only a charge of disobeying a direct order to pack his things, thus depriving him of a 24 hours notice that the original charge would be minimized." (Compl., docket #10, Page ID#36.) Reading Plaintiff's complaint liberally, *see Haines*, 404 U.S. at 520, Plaintiff further contends that Defendants violated his due process rights by failing to provide him with a NOI in accordance with MDOC Policy Directive 04.05.120, by failing to give him twenty-four hours' notice of the classification change in his misconduct ticket and by forfeiting his disciplinary credits after his misconduct conviction.

For relief, Plaintiff requests monetary damages, his misconduct conviction removed from his record and his forfeited days of disciplinary credits restored.

---

[2]Under MDOC Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. (*See* Policy Directive 03.03.105, ¶ B (effective Apr. 9, 2012).

**Discussion**

I. Immunity

Plaintiff claims that Defendant Maki retaliated against him by changing the classification of his misconduct because Plaintiff filed a grievance. Defendant Maki is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Plaintiff's action against Hearing Officer Maki fails because Maki is absolutely immune under the circumstances of this case.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673

F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, Plaintiff's claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Retaliation**

Plaintiff alleges that Defendants Sprader, Bauman, Lesatz and Lindemuth retaliated against him by giving him a misconduct ticket after he filed a grievance against Defendants Sprader and Lesatz and requested protection. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), the Court assumes that the first element is met. Moreover, the filing of a misconduct

ticket unquestionably is an adverse action. *See Scott v. Stone,* 254 F. App'x 469, 472 (6th Cir. 2007) ("Charging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges," even "when the charges are subsequently determined to be unfounded . . . .") (*citing King v. Zamiara*, 150 F. App'x 485, 493–94 (6th Cir. 2005)). Plaintiff, however, fails to satisfy the third element because there was probable cause for his misconduct conviction.

In 2006, the Supreme Court concluded in *Hartman v. Moore*, 547 U.S. 250 (2006), that a plaintiff bringing a First-Amendment retaliatory prosecution claim must plead and prove the absence of probable cause. In *Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006), the Sixth Circuit held that, applying *Hartman,* a claim of First-Amendment retaliatory arrest requires a plaintiff to plead and prove the absence of probable cause. The Supreme Court declined to decide whether a retaliatory arrest was actionable if supported by probable cause. *See Reichle v. Howards*, 132 S. Ct. 2088 (2012). Instead, the Court held that the officers were entitled to qualified immunity because it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation. *Id.* at 2097.

A prison misconduct charge does not precisely parallel either an arrest or a prosecution, because there is no actual prosecutor or arresting officer, only a charging officer and a hearing officer. Nevertheless, a misconduct charge must be considered comparable to one of those two things. Accordingly, under the reasoning of *Hartman* and *Barnes* collectively, a prisoner's claim of retaliatory misconduct must plead and prove the absence of probable cause. Where a prisoner concedes the behavior but disputes the motive of the charging officer, the claims are clearly barred. At a minimum, such a finding of guilt establishes probable cause. Because there was probable cause for Plaintiff's misconduct conviction, Plaintiff's retaliation claim fails to state a claim.

In addition, in those cases in which the hearing officer has made a finding of guilt, the claim will be barred by deference to the state's finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 914-17 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding is not subject to challenge in a § 1983 action).

For both reasons, Plaintiff's retaliation claim fails to state a claim for relief.

B. **Due Process - Misconduct Conviction**

Plaintiff complains that he was not provided twenty-four hours notice of the classification change in his misconduct ticket and Defendant Bauman wrongly forfeited his disciplinary credits after his major misconduct conviction. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum

> procedures appropriate under the circumstances and required by the Due Process
> Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, Plaintiff may nevertheless be able to raise a due-process challenge to a prison misconduct conviction that results in a significant, atypical deprivation. *See Sandin v. Conner*, 515 U.S. 472 (1995). Plaintiff

---

[3]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

has not identified any significant deprivation arising from his conviction. As a consequence of his misconduct charge, Plaintiff was placed in administrative segregation. Generally courts will consider the nature and duration of a stay in administrative segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 793. In *Sandin*, the Supreme Court concluded that disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. Likewise, the Sixth Circuit has often held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest. *See e.g., Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship").

Plaintiff was classified to administrative segregation on March 30, 2012 but he does not allege how long he spent in LMF administrative segregation. Plaintiff was transferred to Baraga Maximum Correctional Facility sometime prior to October 25, 2012.[4] Even if Plaintiff was incarcerated in administrative segregation from March 30, 2012 to October 25, 2012, it would only be 209 days. The Sixth Circuit has held that confinement in administrative segregation for one or two years does not implicate a liberty interest. *See, e.g., Jones*, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison

---

[4]According to Plaintiff's complaint in *Fields v. Gerth et al.*, No. 2:13-cv-306 (W.D. Mich.), Plaintiff was incarcerated at Baraga Maximum Correctional Facility on October 25, 2012. *See* Compl, docket #1, Page ID##1, 2 in *Fields v. Gerth et al.*, No. 2:13-cv-306 (W.D. Mich.)

crowding). Instead, segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010); *see, e.g.*, *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years in segregation implicates a liberty interest). Plaintiff's incarceration at the LMF administrative segregation, at most was 209 days. Accordingly, Plaintiff's confinement in administrative segregation was neither atypical nor significant in relation to the ordinary incidents of incarceration. As a result, Plaintiff's due process allegations fail to state a claim.

### C. Due Process - NOI

Plaintiff claims that he should have received a NOI prior to being classified to administration segregation. As the Court previously discussed, Plaintiff's incarceration in administrative segregation did not impose an "atypical and significant hardship" implicating a protected liberty interest. *Sandin*, 515 U.S. at 486-87.

Moreover, even if Plaintiff had a liberty interest in his segregation, he was not constitutionally entitled to a NOI *before* he was placed in administrative segregation. A due process claim "is not complete unless and until the States fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Plaintiff ultimately received all of the process in which he was entitled during the course of the misconduct proceeding. Accordingly, Plaintiff fails to state a procedural due process claim for not receiving a NOI.

To the extent Plaintiff claims that Defendants failed to follow policy, the alleged failure to comply with an administrative rule or policy does not itself rise to the level of a

constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Further, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: March 7, 2014 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE